USCA1 Opinion

 

 June 9, 1994 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT _________________________ No. 93-1601 UNITED STATES OF AMERICA, Appellee, v. JESUS M. QUINONES, a/k/a JESUS M. QUINONES-RODRIGUEZ Defendant, Appellant. _________________________ ERRATA SHEET ERRATA SHEET The order of the court issued on May 20, 1994 is corrected as follows: On page 15, line 8, change F.2d to F.3d. UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT _________________________ No. 93-1601 UNITED STATES OF AMERICA, Appellee, v. JESUS M. QUINONES, a/k/a JESUS M. QUINONES-RODRIGUEZ, Defendant, Appellant. _________________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Jose Antonio Fuste, U.S. District Judge] ___________________ _________________________ Before Selya, Circuit Judge, _____________ Bownes, Senior Circuit Judge, ____________________ and Boudin, Circuit Judge. _____________ _________________________ Luis A. Plaza-Mariota, by appointment of the court, for ______________________ appellant. Jose A. Quiles-Espinosa, Senior Litigation Counsel, with _________________________ whom Guillermo Gil, United States Attorney, and Miguel A. ______________ __________ Pereira, Assistant United States Attorney, were on brief, for _______ appellee. _________________________ May 20, 1994 _________________________ SELYA, Circuit Judge. This appeal requires that we SELYA, Circuit Judge. _____________ explicate the circumstances in which consecutive sentences may be appropriate under the sentencing guidelines and the methodology for imposing such sentences.1 We then test the sentence imposed below in light of these emergent principles. I. DERIVATION OF THE SENTENCE I. DERIVATION OF THE SENTENCE In late 1992, a federal grand jury indicted defendant- appellant Jesus M. Quinones-Rodriguez (Quinones) on one count of carjacking in violation of 18 U.S.C. 2119(1). The next month, the grand jury returned a separate indictment charging appellant with participating in a different carjacking episode. After the district court consolidated the cases, appellant pleaded guilty to both charges. When no guideline exists referable to a particular offense of conviction, a sentencing court must select, and then apply, the most analogous offense guideline. See U.S.S.G. ___ 2X5.1; see also United States v. Mariano, 983 F.2d 1150, 1158-60 ___ ____ _____________ _______ (1st Cir. 1993) (describing mechanics of choosing analogy). Because no guideline had yet been promulgated for carjacking, the district court borrowed the robbery guideline, U.S.S.G. 2B3.1, which specified a base offense level (BOL) of 20. The district court then embarked upon a series of ____________________ 1The November 1992 edition of the guidelines applies in this case. See United States v. Harotunian, 920 F.2d 1040, 1041-42 ___ _____________ __________ (1st Cir. 1990) (explaining that the guidelines in effect at the time of sentencing control unless ex post facto considerations prohibit their use). Hence, all references herein are to that edition. 3 interim calculations. It increased the BOL: by seven levels because a perpetrator discharged a firearm in the course of one carjacking, see U.S.S.G. 2B3.1(b)(2)(A); by two levels because ___ the perpetrators inflicted bodily injury on certain victims, see ___ id. 2B3.1(b)(3)(A); by four levels because the perpetrators ___ abducted two of the victims, see id. 2B3.1(b)(4)(A); and by one ___ ___ level because the amount of loss, while not over $50,000, nonetheless exceeded $10,000, see id. 2B3.1(b)(6)(B) (C). The ___ ___ court added two levels to reflect the existence of separate "groups" of offenses,2 see U.S.S.G. 3D1.4(a), after determining ___ that the carjacking charges were non-groupable, see U.S.S.G. ___ 3D1.2(d) (excluding robbery from the operation of standard grouping principles). And, finally, the court deducted three levels for acceptance of responsibility, see U.S.S.G. 3E1.1(b). ___ The adjustments that we have catalogued produced a guideline sentencing range (GSR) of 168 210 months.3 At the sentencing hearing, the judge recognized that, in the "typical case," concurrent sentences, rather than consecutive sentences, are the norm; that, absent a departure, the guidelines would generate a total punishment of no more than 210 months in prison "for the whole case," that is, for both carjackings; and that, in ____ ____________________ 2Under the grouping rules, a single charged offense can itself constitute a cognizable "group." See U.S.S.G. 3D1.2, ___ comment. (n.7). So it is here. 3Appellant's GSR is the product of an adjusted offense level of 33, tabulated at criminal history category III. Appellant did not object either to the district court's interim sentencing calculations or to its compilation of the criminal history score. Hence, we take as a given that the GSR is correctly calibrated. 4 a concurrent sentence paradigm, the total punishment could not lawfully exceed the maximum term of imprisonment 15 years (180 months) that Congress had established for a carjacking conviction, see 18 U.S.C. 2119(1). Nevertheless, the judge ___ eschewed the imposition of concurrent sentences. He reasoned that, given appellant's "extreme conduct," the case was not a "normal, typical guideline case"; that a 180-month maximum sentence would not be "adequate to achieve punishment commensurate to the offense conduct"; and, therefore, that concurrent sentences were not an acceptable option. The judge then departed upwardly and imposed a 336- month prison term a term that, in the judge's words, "would be the equivalent of consecutive sentences in both consolidated criminal cases on the basis of the lower end of the guideline on each [168 months]." Citing U.S.S.G. 5K2.8, the judge grounded the upward departure in "[t]he heinous, the brutal, the cruel, degrading treatment that was given to some of the victims." This appeal followed. II. QUESTIONS PRESENTED II. QUESTIONS PRESENTED Quinones attacks the sentences on three fronts. His principal claim is that concurrent sentences are mandated in multiple-count cases by dint of U.S.S.G. 5G1.2. Secondarily, he asserts that, even if consecutive sentences are a theoretical possibility, his conduct was not sufficiently "extreme" to warrant so unorthodox an approach. All else aside, he asseverates that the outcome here reflects an excessive, 5 unreasonable increase in punishment an increase that simply cannot be justified. Although these forays are mounted with great energy, they sputter and stall, with one possible exception. III. IMPOSING CONSECUTIVE SENTENCES III. IMPOSING CONSECUTIVE SENTENCES Appellant claims that U.S.S.G. 5G1.2 requires that he be sentenced to concurrent terms of imprisonment for the two carjackings.4 We explore this claim. Section 5G1.2 anticipates that, in the usual case, at least one count in a multiple-count indictment will be able to accommodate the total punishment for the offenses of conviction; ____________________ 4The operative language of section 5G1.2 provides that, in multiple-count cases, "the sentence imposed on each count shall be the total punishment," U.S.S.G. 5G1.2(b), and that: (c) If the sentence imposed on the count carrying the highest statutory maximum is adequate to achieve the total punishment, then the sentences on all counts shall run concurrently, except to the extent otherwise required by law. (d) If the sentence imposed on the count carrying the highest statutory maximum is less than the total punishment, then the sentence imposed on one or more of the other counts shall run consecutively, but only to the extent necessary to produce a combined sentence equal to the total punishment. In all other respects sentences on all counts shall run concurrently . . . . U.S.S.G. 5G1.2(c)-(d). While this case involves two separate indictments, section 5G1.2 treats consolidated indictments in the same manner as it treats a single indictment containing multiple counts. See id., comment. (explaining that 5G1.2 applies to ___ ___ "multiple counts of conviction . . . contained in different indictments . . . for which sentences are to be imposed at the same time or in a consolidated proceeding"). 6 in other words, one count (if not more) will have a statutory maximum steep enough to permit imposition of the total punishment for all counts as the sentence on that one count. And when that is so, "[t]he sentence on each of the other counts will then be set at the lesser of the total punishment and the applicable statutory maximum, and be made to run concurrently with all or part of the longest sentence." U.S.S.G. 5G1.2, comment. Here, the charges confronting appellant comprised two counts of carjacking, both having the same 15-year statutory maximum. Because this ceiling fell near the midpoint of the GSR, the court could have followed the usual praxis, imposed a sentence on each count that fit within both the statutory maximum and the GSR, and run those sentences concurrently. The issue in this case, however, is not whether concurrent sentences were feasible clearly, they were but whether the lower court possessed the power and authority to follow a different course and impose consecutive sentences. In arming ourselves to undertake this mission, the guidelines are not our only ordnance. By statute, Congress empowered district courts to utilize either concurrent or consecutive sentences. See 18 U.S.C. 3584(a) (providing that ___ "if multiple terms of imprisonment are imposed on a defendant at the same time . . . the terms may run concurrently or consecutively"). In the same statute, Congress directed courts, in choosing between concurrent and consecutive sentences, to consider a specific set of factors, see 18 U.S.C. 3584(b) ___ 7 (directing consideration of factors specified in 18 U.S.C. 3553(a)). These factors include the kinds of sentence and sentencing ranges established for the offenses of conviction in the guidelines. See 18 U.S.C. 3553(a)(4). This medley ___ harmonizes melodiously with 28 U.S.C. 994(a)(1)(D), a statute that instructs a sentencing court to employ the guidelines in determining "whether multiple sentences to terms of imprisonment should be ordered to run concurrently or consecutively." We start the task of integrating these various provisions by recalling United States v. Flowers, 995 F.2d 315 _____________ _______ (1st Cir. 1993), a case in which we confirmed that the guidelines do not entirely eradicate a district court's sentence-structuring power. See id. at 317. Rather, "[a] sentencing court may depart ___ ___ from the Guidelines rule, provided it explains why the case before it is unusual and lies outside the Guidelines `heartland.'" Id. Although Flowers is not directly on point ___ _______ there, we were addressing a court's ability to deviate from the imperatives of U.S.S.G. 5G1.3, a guideline that deals with the sentencing of defendants who are already subject to undischarged terms of immurement we think that the same logic applies to the closely related question of a district court's discretion vel non ___ ___ under U.S.S.G. 5G1.2. Extrapolating from the Flowers rationale, we hold that _______ a sentencing court possesses the power to impose either concurrent or consecutive sentences in a multiple-count case. We also hold, however, that this power, like so many other 8 sentencing powers in modern federal criminal practice, only can be exercised consonant with the overall thrust of the sentencing guidelines. To be specific, a sentencing court's decision to abjure the standard concurrent sentence paradigm should be classified as, and must therefore meet the requirements of, a departure. It follows that a district court only possesses the power to deviate from the concurrent sentencing regime prescribed by section 5G1.2 if, and to the extent that, circumstances exist that warrant a departure, see, e.g., U.S.S.G. 5K2.0. ___ ____ This interpretation has much to commend it. In the first place it meshes the operative statutes with the sentencing guidelines a necessary integration inasmuch as the statutes, read as a unit, dictate that a sentencing court consider the guidelines and policy statements promulgated by the Sentencing Commission. See 18 U.S.C. 3584(a) & (b), 3583(a). In the ___ second place, this interpretation makes explicit the rationale underlying our recent opinion in United States v. Hernandez- ______________ __________ Coplin, ___ F.3d ___, ___ (1st Cir. 1994) [No. 92-2228, slip op. ______ at 20-21] (indicating that, once a sentencing court appropriately determines to depart from the GSR in a multiple-count case, consecutive sentences comprise a permissible method of effectuating such decisions if the highest available statutory maximum for any single count is too confining). In the third place, this interpretation lands us in excellent company; the two other circuits to have addressed the issue have decided it in the same way. See United States v. Perez, 956 F.2d 1098, 1103 (11th ___ _____________ _____ 9 Cir. 1992); United States v. Pedrioli, 931 F.2d 31, 32 (9th Cir. _____________ ________ 1991). To recapitulate, a district court retains discretion under 18 U.S.C. 3584(a) and the sentencing guidelines to order that sentences be served consecutively notwithstanding the dictates of U.S.S.G. 5G1.2. This discretion, however, is not sui generis; it is simply another manifestation of the district ___ _______ courts' departure power. Because this is so, a district court can only impose consecutive sentences in derogation of U.S.S.G. 5G1.2 if it follows the accepted protocol for guideline departures. See Perez, 956 F.2d at 1103; see also Pedrioli, 931 ___ _____ ___ ____ ________ F.2d at 33 (explaining that "[t]he statutory reference to the guidelines . . . incorporates the guidelines' own procedures for departing from guideline recommendations"). The short of it is that a court can impose consecutive sentences only by complying with the three-step procedure first formulated in United States _____________ v. Diaz-Villafane, 874 F.2d 43, 49 (1st Cir.), cert. denied, 493 ______________ _____ ______ U.S. 862 (1989), and later refined in United States v. Rivera, ______________ ______ 994 F.2d 942, 950 (1st Cir. 1993). IV. THE PROPRIETY OF THE DEPARTURE IV. THE PROPRIETY OF THE DEPARTURE It is against this backdrop that we turn to the sentences imposed in this case. While the GSR topped out at 210 months, the court, using the consecutive sentence mechanism, directed that appellant serve a total of 336 months in prison.5 ____________________ 5Because appellant pleaded guilty on two counts, each of which carried a potential 15-year prison term, see 18 U.S.C. ___ 2119(1), the maximum aggregate term available by statute was 30 10 Appellant assigns error. We review a sentencing court's decision to depart by means of a three-step procedure: First, we evaluate the circumstances relied on by the district court in determining that the case is sufficiently "unusual" to warrant departure. If the stated circumstances pass muster, we proceed to the next rung and determine whether those circumstances were adequately documented. After the first two levels are climbed, the departure must be measured by a standard of reasonableness. United States v. Aguilar-Pena, 887 F.2d 347, 350 (1st Cir. 1989) ______________ ____________ (citing Diaz-Villafane, 874 F.2d at 49); see also United States ______________ ___ ____ _____________ v. Rosales, ___ F.3d ___, ___ (1st Cir. 1994) [No. 92-1732, slip _______ op. at 15]; Rivera, 994 F.2d at 950. Our task is simplified ______ here, as the district court premised its upward departure on appellant's "extreme conduct" in the commission of the offense and extreme conduct is plainly a circumstance justifying an upward departure.6 See United States v. Johnson, 952 F.2d 565, ___ _____________ _______ ____________________ years. See Hernandez Coplin, ___ F.3d at ___ [slip op. at 20] ___ ________________ (explaining that, in a multiple-count case, "the statutory maximum is derived by adding up the maximums for each of the counts [of conviction]"). 6The guideline provision that explicitly encourages such departures states in relevant part: If the defendant's conduct was unusually heinous, cruel, brutal, or degrading to the victim, the court may increase the sentence above the guideline range to reflect the nature of the conduct. Examples of extreme conduct include torture of a victim, gratuitous infliction of injury, or prolonging of pain or humiliation. U.S.S.G. 5K2.8. 11 584 (1st Cir. 1991) (applying U.S.S.G. 5K2.8); United States v. _____________ Ellis, 935 F.2d 385, 395 (1st Cir. 1991) (same). Thus, we are _____ concerned exclusively with the second and third steps of the departure pavane. A. Factual Justification. A. Factual Justification. _____________________ Since carjacking by its nature is a violent felony, see, e.g., U.S.S.G. 2B3.1 (defining carjacking as "the taking or ___ ____ attempted taking of a motor vehicle from the person or presence of another by force and violence or by intimidation"), particular instances of carjacking can bear the weight of an upward departure only when they involve conduct that is more "heinous, cruel, brutal, or degrading to the victim(s)" than the sort of conduct ordinarily associated with run-of-the-mill carjacking cases. See United States v. Kelly, 1 F.3d 1137, 1143 (10th Cir. ___ _____________ _____ 1993); see generally U.S.S.G. 5K2.0. At the second step of the ___ _________ Diaz-Villafane inquiry, appellate review of a district court's ______________ determination that a case is unusual, and therefore warrants departure, must take place "with full awareness of, and respect for, the trier's superior `feel' for the case." Diaz-Villafane, ______________ 874 F.2d at 50.7 Insofar as it involves factfinding, this ____________________ 7Of course, when "departure decisions reflect a determination of the purpose of, or an interpretation of the language in, a Guideline," plenary review is appropriate. United ______ States v. Doe, 18 F.3d 41, 43-44 (1st Cir. 1994) (citations and ______ ___ internal quotation marks omitted). But no such questions permeate this appeal. The relevant language of section 5K2.8 is not problematic, for the guideline specifically "recognizes that departure may be appropriate when the defendant's actions are heinous, cruel, or brutal beyond the characteristics inherently ______________________________________ 12 standard of review translates into what courts commonly call clear-error review. See id. And thereafter, "due deference" is ___ ___ accorded to the district court's application of the guidelines to particular facts. 18 U.S.C. 3742(e). In the case at bar, the judge premised the upward departure on the unusually brutal, cruel, and degrading treatment accorded some of the victims. Having reviewed the record with care, we believe that the lower court's factfinding is entirely supportable. Based on those findings, the circumstances of the carjackings in which appellant participated are significantly atypical. Consequently, a departure is warranted. As previously noted, appellant pleaded guilty to two ___ carjacking charges. His argument against the finding of `extreme conduct' is directed mainly to the November 8, 1992 incident. He claims that he is insulated from responsibility for any excesses that took place during that episode because he shot himself in the leg, required medical assistance, and was elsewhere "when the victims were robbed, beaten and shot." This claim does not withstand scrutiny. Despite appellant's self-inflicted wound, there is ample evidence that he took part in the beatings. Statements of fact in a presentence report are generally accorded evidentiary significance at sentencing. See, e.g., United States v. Morillo, 8 F.3d 864, 872 ___ ____ _____________ _______ (1st Cir. 1993) ("Facts contained in a presentence report ____________________ associated with the crime being sentenced." Kelly, 1 F.3d at ___________________________________________ _____ 1143 (emphasis supplied). 13 ordinarily are considered reliable evidence for sentencing purposes."). That proposition has special force where no objection was lodged to the probation officer's account. See id. ___ ___ at 872-73. In this instance, the presentence report recites that appellant entered the victims' vehicle, forcefully struck one man on the head, aimed his gun at the second man, and threatened to blow off his head. He then continuously pistol-whipped the first victim while he robbed him of his jewelry. Appellant accepted this account without particularized objection. This conduct especially the incessant beating of the first victim is of a piece with the examples enumerated in section 5K2.8 itself. See ___ supra note 6. It is emblematic of the very sort of sociopathic _____ behavior that section 5K2.8 sought to single out for special attention. Moreover, the basis for departure extends beyond the November 8 incident; the court below also grounded its departure on appellant's conduct during the episode that occurred two days earlier. Appellant does not discuss his role in the first carjacking. We can readily appreciate his diffidence: the circumstances of that incident convey a grim message. In regard to the events of November 6, the trial court found that the victim, Munoz, had been exposed to a series of "brutalities" for a period of over three hours; that he was "mercilessly beaten with cocked handguns" by the assailants, including appellant; that the carjackers constantly threatened 14 him with death, forcing him to beg for his life; that, at one point, Munoz was coerced into putting his finger into the barrel of a .357 magnum revolver, in a macabre sort of game; and that the carjackers appeared to be enjoying themselves throughout. These findings are all solidly rooted in the record. Accordingly, we rule that the circumstances of the two offenses and the facts relative to Quinones' participation in them justify an upward departure. B. Reasonableness. B. Reasonableness. ______________ We now reach the final rung on the departure ladder. Our duty is clear: "once we have assured ourselves that the sentencing court considered circumstances appropriate to the departure equation and that those factors enjoyed adequate record support, the direction and degree of departure must, on appeal, be measured by a standard of reasonableness." Diaz-Villafane, ______________ 874 F.2d at 49; accord United States v. Doe, 18 F.3d 41, 44 (1st ______ _____________ ___ Cir. 1994). Noting that the sentences together represent an increase of 126 months over the pinnacle of the GSR, or, put another way, a 60% increase in the overall quantum of punishment, appellant asseverates that so substantial a departure is excessive, and, hence, unreasonable. This asseveration takes on a special gloss because the district court made no effort to explain the degree of departure. We recently confronted a somewhat similar situation in Rosales. There, Judge Bownes _______ wrote: 15 Although sentencing courts have substantial leeway with respect to the degree of a departure, this freedom does not relieve a sentencing court from explaining its ultimate decision of how far to depart. Merely explaining why a departure was made does not fulfill the separate requirement of stating the reasons for imposing the particular sentence. Rosales, ___ F.3d at ___ [slip op. at 18] (citations and internal _______ quotations marks omitted). Rosales builds on a long line of _______ circuit precedent to like effect. See, e.g., Rivera, 994 F.3d at ___ ____ ______ 950; United States v. Ocasio, 914 F.2d 330, 336 (1st Cir. 1990). _____________ ______ Other signposts point in the same direction. See, e.g., Kelly, 1 ___ ____ _____ F.2d at 1144; 18 U.S.C. 3553(c)(2). To be sure, district courts need not be precise to the point of pedantry in explaining judgment calls undertaken in the course of the sentencing process. We have consistently rejected a per se rule tying degrees of departure to the use of analogs, ___ __ see, e.g., United States v. Aymelek, 926 F.2d 64, 69-70 (1st Cir. ___ ____ _____________ _______ 1991); and we have, on occasion, sanctioned departures in the absence of a clear explanation for the designated degree of departure, see, e.g., United States v. Ramirez, 11 F.3d 10, 14 ___ ____ _____________ _______ (1st Cir. 1993). But the omission of an explicit explanation of the scope of a departure is a practice that should be employed sparingly. On appeal, we will overlook such an omission only if the reasons for the judge's choice are obvious or if an explanation can fairly be implied from the record as a whole. Here, the record gives us pause. The extent of the departure, whether viewed in absolute or relative terms, is very 16 great.8 The court does not indicate why it believed that a lesser departure would be inadequate. Indeed, the judge's only statement apropos of the degree of departure was to the effect that a 336-month prison term would be equivalent to a sentence for each offense at the low end of the GSR, served consecutively. This comment sheds very little light and does not in any way buttress the degree of departure. Because we find ourselves unable to evaluate the reasonableness of the court's departure equation without the benefit of some elaboration, we must take suitable precautions. As matters now stand, there is simply too great a risk that the extra period of incarceration imposed on appellant was derived in an arbitrary manner. Rather than requiring resentencing, however, we think a less cumbersome alternative may suffice. In United States v. Levy, 897 F.2d 596 (1st Cir. 1990), _____________ ____ we noted that, if ambiguities lurk in the sentencing record, a court of appeals may essay a limited remand for clarificatory purposes. Id. at 599 (citing illustrative cases); see also ___ ___ ____ United States v. Parra-Ibanez, 951 F.2d 21, 22 (1st Cir. 1991) ______________ ____________ (remanding for clarification whilst retaining appellate jurisdiction). We believe that the interests of justice can be served fully by following a similar practice here. Hence, we remand the matter to the district court with directions to revisit the extent of the departure and either (a) vacate the ____________________ 8The departure added over ten years of incremental incarceration to appellant's total punishment, boosting the length of sentence by some 60%. 17 sentence and conduct a new sentencing hearing, or (b) reaffirm the sentence previously imposed, filing with the clerk of the district court a written statement of its reasons for settling upon, and adhering to, the degree of departure.9 In all events, the district court shall notify the clerk of this court within twenty days of the date hereof as to which option it chooses to pursue. In the meantime, we shall retain appellate jurisdiction. Of course, we express no opinion on the appropriateness of the sentences previously imposed. It is so ordered. It is so ordered. ________________ ____________________ 9The district court, in its discretion, may (but need not) convene a hearing or invite arguments from counsel in attempting to decide which option to pursue. 18