**UNITED STATES of America, Plaintiff, Appellee,**

v.

**David P. PRATT, Defendant, Appellant.**

No. 95–1666.

United States Court of Appeals, First Circuit.

Heard Dec. 7, 1995.

Decided Jan. 18, 1996.

M. Kristin Spath, Assistant Federal Defender, for appellant.

Peter E. Papps, First Assistant U.S. Attorney, with whom Paul M. Gagnon, United States Attorney, was on brief for appellee.

Before TORRUELLA, Chief Judge, ALDRICH, Senior Circuit Judge, and SELYA, Circuit Judge.

BAILEY ALDRICH, Senior Circuit Judge.

Defendant David P. Pratt, having been allowed to withdraw a plea of guilty, was tried to a jury for violation of United States Code, Title 18, Section 876 (Mailing a Threatening Communication) and found guilty. He now appeals, with new counsel, claiming violation of Fed.R.Evid. 404(b) by the admission of prejudicial testimony of another threat, and from a sentence that included a two level upward departure. We remand for further consideration of sentence.

In August, 1991, defendant's automobile was repossessed for nonpayment of an installment, and discovered to contain a sub- stantial number of automatic and semi-automatic firearms and explosive devices. These were turned over to the Goffstown, New Hampshire, Police Department but eventually found to be defendant's lawful property. In spite of this finding, Police Chief Stephen Monier refused to return them, absent a court order. Defendant, greatly angered by the delay, complained a number of times. He phoned the police station on the morning of July 20, 1992, and was told to call back that afternoon. An hour later he telephoned Chief Monier's home and spoke to a young friend of Monier's ten year old daughter, who said that he was not there. The man stated that he was David Pratt and to tell her father, "I know where he lives." When informed of the call, Monier took it to be a serious threat. On September 14, 1992, a New Hampshire court ordered that defendant's weapons and devices be returned to him, and the Goffstown police complied.

On October 1, 1992, Monier received through the mail, postage prepaid, a carton which was found to contain a dead and badly mutilated pig of some 29 pounds. There were no tell-tale writings on, or in, the package, but fingerprints, identified to be defendant's, were found on the outside. At trial defendant testified that the pig was his; that he had shot it, following an accident, and that one Jennifer Gagnon stole it from his refrigerator and mailed it to Monier without his suggestion or knowledge. By the time of trial, Gagnon was deceased.

Although there was other supporting evidence, including defendant's boasting to a friend that he had sought to scare Monier by sending the mutilated pig, the government chose to tighten its case by eliciting evidence of the threatening telephone call. Defendant objected at the outset to the admission of any evidence of the call, and to "this whole line of testimony." The court disagreed, but did caution the jury to consider any evidence, if a prior threat, as distinct from the pending charge, and as relevant "only to show things like the identity of the defendant or his possible motive or his possible intent or the absence of mistake or accident with respect to the charge that's on trial here".

On appeal defendant argues that the telephone threat was very different from the one with which he was charged, and that its introduction was simply to blacken his character as forbidden by Rule 404(b). *See, United States v. Tuesta–Toro,* 29 F.3d 771, 775 (1st Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 947, 130 L.Ed.2d 890 (1995). He contends, first, that it was inadmissible altogether under Fed.R.Evid. 404(b),[1] or that its prejudice would in any event substantially exceed its probative value, rendering it excludable under Fed.R.Evid. 403.[2] The government says, *inter alia,* that the threat displayed defendant's grudge against Chief Monier, an intent to act upon it, and knowledge of his victim's residence (to which the packaged pig was addressed), as well as being a self-identification against his own interest. We quite agree that the disputed evidence had "special relevance" to material issues, *Tuesta–Toro,* 29 F.3d at 775—even defendant concedes the purpose for introducing it included showing the identity of the person who mailed the pig—but the prosecution's use of it progressed well beyond the necessary. Its admission provided the basis for subsequent dramatization of the call's emotional effect upon Monier and his family, particularly on his young daughter. This was not relevant, and magnified the very prejudice that the Rules of Evidence were designed to minimize.[3] Fed.R.Evid. 403, 404(b). *Tuesta–Toro,* 29 F.3d at 775; *United States v. Aguilar–Aranceta,* 58 F.3d 796, 798 (1st Cir.1995).

However, defendant's failure to call the court's attention to prosecutorial excess as it occurred,[4] and to request consideration of the probative value of proffers concerning, for example, the anxiety of the Chief's family, his keeping a firearm beside his bed, and the inability of his little girl to sleep alone following the telephone threat, in light of their likely prejudicial effect, deprived the court of an opportunity to make particularized rulings which we could now review. It is counsel's duty not to sit idly by while his case is conspicuously suffering, *see Clemente v. Carnicon–Puerto Rico Mgmt. Assoc.,* 52 F.3d 383, 387 (1st Cir.1995), and it was his responsibility to object when testimony strays outside the court's prior limiting instruction. Courts may be reluctant to interfere and may have difficulty deciding whether to exclude testimony on their own. We review for plain error alone. Fed.R.Evid. 103. *Tuesta–Toro,* 29 F.3d at 775 (absent contemporaneous objection, court will reverse only if error "seriously affected the fundamental fairness and basic integrity of the proceedings") (citation omitted).

While testimony as to the threat's effect upon Monier and his family must have been detrimental to defendant—though not so pervasive as defendant claims—the government's case on the merits was too strong, in our opinion, to have made this harm to defendant a factor of consequence in the result. Defendant's own statements, his fingerprints on the package, his established anger over the unlawful retention of his firearms, his ownership of the pig carcass, and, notably, the absence of any visible motive to have caused the conveniently deceased Gagnon to have mailed it, were overwhelming. While we might order a new trial simply to teach government counsel that his primary duty is to obtain justice, not to win cases, *see Brady v. Maryland,* 373 U.S. 83, 87–88, 83 S.Ct. 1194, 1196–97, 10 L.Ed.2d 215 (1963), we

---

1. Rule 404(b) provides, in relevant part:

   Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

2. Rule 403 states, in relevant part:

   Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice …

3. The government's brief is totally silent in spite of defendant's detailed complaint. At oral argument its sole response to our questioning was that its purpose was to make sure the jury realized there had been a call, and that the "cold record" may look worse to us. Counsel's thermometer needs adjustment.

4. Defendant's objection at the time of its initial introduction "to this line of testimony" related to admissibility of the *fact* of the phone call, correctly overruled by the court, not to the subsequent dramatization of the family's fears, which elicited not a single protest from defense counsel.

hope we have said enough without such draconian action.

As to the sentence, application of § 4A1.1 of the Sentencing Guidelines yielded criminal history category (CHC) I, based on one point assigned for defendant's only countable prior conviction. However, the court found CHC I clearly under-represented the seriousness of defendant's criminal history and his recidivism. Impressed by a "string of zeros" in defendant's pre-sentence report (PSR) indicating a series of past convictions—for disorderly conduct, attendance violations while in the military, criminal liability for conduct of another, criminal threatening, assault, and driving while intoxicated—for which no "points" could be assigned under § 4A1.1, the court added 1 point for each of the last four and bumped defendant into CHC III. Notably with respect to recidivism, each of these were misdemeanors that occurred a minimum of 13 years prior to the instant offense.

■ Section 4A1.3 allows a sentencing court to consider uncounted prior convictions and other criminal behavior in increasing the CHC[5] if "reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes." U.S.S.G. § 4A1.3. Its decision to depart, as well as the degree of departure, is entitled to respect, given its "special competence," experience, and "superior feel" for the case. *United States v. Rivera,* 994 F.2d 942, at 950, 951 (1st Cir.1993) (citing *Williams v. United States,* 503 U.S. 193, 112 S.Ct. 1112, 1121, 117 L.Ed.2d 341 (1992)); *United States v. Shrader,* 56 F.3d 288, 292 (1st Cir.1995). Once we determine the court acted within its discretion, our only question is whether its decision was reasonable and adequately explained. *Id.*

■ We first note that defendant is incorrect to suggest that the Guidelines forbid or discourage consideration of old convictions in a decision to depart. *Cf. Rivera,* 994 F.2d at 948–49 (detailing forbidden and discouraged departures). Likelihood of recidivism is an *alternative* justification to under-representation of the seriousness of defendant's criminal history for a decision to depart upward. U.S.S.G. § 4A1.3; *Schrader,* 56 F.3d at 292. The court here made the latter finding, based on prior sentences for similar conduct (1979 assault and 1977 criminal threatening), and serious dissimilar conduct (1980 DWI and 1977 criminal liability for conduct of another and theft[6]). Where these considerations are appropriate to the decision whether to depart, and defendant's PSR provides an adequate basis, we cannot substitute our judgment. *United States v. Quinones,* 26 F.3d 213, 219 (1st Cir.1994); *Rivera,* 994 F.2d at 952. *See also Williams,* 503 U.S. at 205, 112 S.Ct. at 1121. However, once the court believes a properly calculated CHC significantly under-represents a defendant's criminal history, the Guidelines direct the court's departure quite specifically: the court must find that "defendant's criminal history *most closely* resembles that of *most* defendants with [the] Criminal History Category [the court seeks to impose]." U.S.S.G. § 4A1.3 (emphasis added). If it were sufficient simply to add points for conduct excluded from the initial CHC calculation to arrive at a higher category, the § 4A1.1 parameters for guiding CHC determination would be nullified. The court's mere conclusion that a CHC III "adequately reflects defendant's criminal history" fails to shed light on this question.

Although we accord "substantial leeway" to a sentencing court's determination of the appropriate degree of departure,

> this freedom does not relieve [it] from explaining its ultimate decision of how far to depart. Merely explaining why a departure was made does not fulfill the separate

U.S.S.G. § 4A1.3.

---

**5.** The relevant provisions include:
   (a) prior sentence(s) not used in computing the criminal history category ...

.     .     .     .     .

   (e) prior similar adult criminal conduct not resulting in a criminal conviction.

**6.** The court indicated this was robbery. Although robbery was the original indictment, defendant ultimately pled guilty to theft.

requirement of stating the reasons for imposing the *particular* sentence.

*Quinones,* 26 F.3d at 219 (emphasis added) (quoting *United States v. Rosales,* 19 F.3d 763, 770 (1st Cir.1994)). *See also Rivera,* 994 F.2d at 946, 949–50. Because we are unable to evaluate responsibly the reasonableness of the extent of the court's departure absent explication, which we observe might include at least an indication of why a one category increase is inadequate, we will follow our past practice of ordering a limited remand for clarification while retaining appellate jurisdiction. *See Quinones,* 26 F.3d at 219–20.

*We affirm defendant's conviction and remand for further proceedings with respect to sentence.*