United States v. Pratt            CR-92-095-M    04/29/96 P
            UNITED STATES DISTRICT COURT FOR THE
                  DISTRICT OF NEW HAMPSHIRE


United States,
      Plaintiff

      v.                                    Crim. No. 92-95-1-M

David P. Pratt,
      Defendant


                   SENTENCING STATEMENT


      This case was remanded for more detailed explanation of the

bases for the court's upward departure relative to defendant's

criminal history category ("CHC").  The court departed from CHC I

to CHC III upon finding that CHC I significantly under-

represented both defendant's actual criminal history and

likelihood of recidivism. In the Statement of Reasons portion of

the applicable judgment (document no. 108), the court explained:

       The sentence departs from the guideline range for the
       following reason:  The Court departed upward, by increasing
       Defendant's criminal history category from I to III, having
       found that criminal history category I did not adequately
       reflect the seriousness of defendant's past conduct or the
       likelihood that defendant will commit other crimes,
       specifically the prior assault (7/29/79) and prior criminal
       threatening (10/18/77) offenses, constituted reliable
       evidence of similar past criminal conduct, and the prior
       criminal liability for the conduct of another related to
       robbery constituted serious dissimilar conduct (although
       some similarity is obvious in the violent nature of this
       crime against the person) as did the prior DWI offense
       (4/1/80).  Points were [not] awarded for those offenses due

to untimeliness.  Awarding points for those offenses would result in 5 criminal history points, which would place the defendant in category III.  The Court found that category III adequately reflects defendant's criminal history. (U.S.S.G. Sections 4A1.3(a) and (3) and 4A1.2(8)).

The Court of Appeals found this explanation provided an inadequate basis for appellate review of the reasonableness of the degree of departure, instructing that it is insufficient to simply "add points for conduct excluded from the initial CHC calculation to arrive at a higher category," and pointing out that this "court's mere conclusion that a CHC III `adequately reflects defendant's criminal history'" fails to shed light on "the controlling question of whether this `defendant's criminal history most closely resembles that of most defendants with [the] Criminal History Category [the court seeks to impose].'" United States v. Pratt, 73 F.3d 450, 453 (1st Cir. 1996) (emphasis in original).  The Court of Appeals also observed that any further explanation "might include at least an indication of why a one category increase is inadequate."  Id., at 454.

## Discussion

This court previously found, and hereby reiterates its finding, that defendant's criminal history category as determined under the United States Sentencing Guidelines (i.e., CHC I) does

2

not adequately reflect: 1) the seriousness of defendant's past criminal conduct; or 2) the likelihood that he will commit other crimes.  In arriving at that conclusion, the court remains satisfied that defendant's criminal history is significantly more serious than reflected by CHC I.  Accordingly, the court departed upward from CHC I.  The degree of that departure was two levels, from CHC I to CHC III.

At issue is the reasonableness, as a matter of law, of the two level rather than a one level departure, the Court of Appeals having held that a departure of some degree is legally supportable in this case.  The Court of Appeals determined, however, that the stated bases for the two level departure were either legally erroneous or insufficiently detailed to permit full appellate review of the reasonableness of a two level departure (as a matter of law), or both.  After much discussion and a change of position or two, defendant and the government agreed that the remand was merely for the purpose of providing a more detailed explanation for selecting CHC III as the appropriate CHC, avoiding, of course, explanations that include "simply [adding] points for conduct excluded from the initial CHC calculation to arrive at a higher category" . . . or "mere conclusion[s] that a CHC III `adequately reflects defendant's

criminal history.'" <u>Id.</u>, at 453. It would also be inappropriate, in my view, to offer explanations now that in reality did not form the original bases for the two level departure, and I shall not do so.

I respectfully disagree that the previous explanation for the two level departure is fairly characterized as a "mere conclusion that a CHC III adequately reflects defendant's criminal history." The statement of reasons accompanying the judgment goes beyond a mere conclusion and, in context, that statement made clear that the category to which the court departed (CHC III) was "adequate" because it neither under-represented nor over-represented defendant's actual criminal history. Nevertheless, further elaboration on the significance of defendant's past serious similar and serious dissimilar criminal conduct as a basis for a two category departure can be provided. I shall elaborate to the best of my ability, recognizing, however, that choosing to depart upward by one level or two is essentially a subjective and discretionary exercise, particularly when the quantifying principles underlying the Guidelines' point system are not to be invoked. After all, "at least where a small departure is involved, it may be difficult to provide any explanation <u>over and above</u> that given for the

4

decision to depart." United States v. Black, 78 F.3d 1, 9 (1st Cir. 1996) (emphasis in original).

## A.   Upward Departure is Appropriate.

An upward departure is unquestionably appropriate in this case because CHC I significantly under-represents this defendant's criminal history.  As calculated under the Guidelines, defendant's CHC is I.  However, defendant's actual criminal history hardly resembles that of most defendants with CHC I.  Those defendants likely have no prior countable convictions, and in any case have no more than one.  Moreover, most defendants in CHC I probably do not have more than one or two uncounted convictions.  This defendant, on the other hand, has ten known prior convictions: 3 military convictions for violation of Article 86 of the Uniform Code of Military Justice[1]; one for disorderly conduct; one for criminal threatening; one for criminal liability for the conduct of another involving theft by unauthorized taking (which was plea bargained down from liability

---

The military convictions were not considered weighty, given the defendant's youth at the time and the non-violent nature of the offenses, but they were not entirely ignored either, since they are part of defendant's demonstrated propensity to knowingly violate the law.  Service members are well aware that absence without leave constitutes a criminal offense punishable by imprisonment.  For that reason, it is more serious than, for example, a civilian's mere failure to appear for work on a given day.  10 U.S.C. § 886.

for another involving robbery); one for assault; one for receiving stolen property; one for driving while under the influence of alcohol; and one for simple assault. Those convictions were not counted in arriving at defendant's criminal history category due to untimeliness (save for the 1987 simple assault conviction). I decline to conclude, however, that the passage of time between defendant's early crimes and his more recent crimes suggests that he was successfully rehabilitated as of 1977, 1979, or 1980, and merely suffered a minor antisocial relapse in 1987 and again in 1993. Nor would I agree that this defendant should be viewed as having only one simple assault conviction for purposes of determining whether CHC I accurately represents his criminal history. This defendant's actual history, old and new, persuades the court that an upward departure is warranted in order to place him in a category that more accurately reflects his actual criminal history than does CHC I.

B.    The Degree of Departure.

The departure to CHC III is a discretionary choice best explained by applying the system at hand, that is by assigning points under the Guidelines as if the serious prior convictions were countable. In that way, the sentencing judge may identify a

degree of departure that, while still basically subjective, is nevertheless consistent with and informed by the values and policies (excepting strict timeliness of course) that underlie the Guidelines system. See, e.g., United States v. Maurice, 69 F.3d 1553, 1559 (11th Cir. 1995). The decision in Pratt, supra, however, seems to hold that assignment of analogous criminal history points to serious but stale prior convictions in order to guide the court's determination of an appropriate degree of departure constitutes an impermissible calculation methodology. Instead, the discretionary degree of departure is apparently to be explained in this circuit solely by demonstrating that a particular defendant's history most closely resembles that of most defendants in the CHC to which the sentencing judge intends to depart.

I begin by articulating why CHC II (a one category increase) is inadequate. Most defendants in CHC II have managed to accumulate 2 or 3 countable points. To be sure, some defendants in that category got there by upward and downward departures, but whatever those defendants' individual histories might be, by definition they would not (or should not under Pratt) have been placed in that category unless their histories were "most like" most defendants already in that category. And, of course the

defendants in that category are unavoidably defined by the Guidelines themselves as persons having accumulated 2 or 3 countable history points. Defendants with the most serious histories in CHC II have, by definition (or by an equivalency analysis as part of a departure) been convicted of offenses warranting assessment of 3 points -- typically, three prior convictions for offenses within ten years of the offense for which sentence is being imposed.

Defendant Pratt is very much unlike most of those defendants in that he has accumulated substantially more convictions (ten). Ten prior convictions are likely more than most defendants in CHC II have accumulated over a career, whether countable or not. Of course, Pratt's offenses occurred, for the most part, more than ten years prior to his conviction for which the current sentence was imposed. To be sure, the "staleness" of those convictions should be taken into account in determining the appropriate degree of departure, but staleness alone hardly affords absolution. The Guidelines do not instruct sentencing judges to treat stale convictions as if they never existed.

There is no precise means by which a specific discounting value can be placed on the staleness factor. It is probably fair to say that because old convictions are less reliable measures of

the person before the court, the Guidelines do not ascribe to them the same weight as recent convictions in attempting to quantify criminal propensity, dangerousness, likelihood of recidivism, or degree of rehabilitation. But, where reliable evidence of past, out-of-time, serious similar and serious dissimilar crimes is before the sentencing court, an upward departure based on such otherwise stale convictions may be warranted and is encouraged under the Guidelines.

To be sure, some of Pratt's multiple uncounted convictions should carry very little weight in determining whether he is most like those in CHC II or those in CHC III. Some, however, should carry substantial weight. Those old crimes of a serious similar and serious dissimilar nature are telling, and they should be considered in assessing which category Pratt belongs in for departure purposes.

U.S.S.G. § 4A1.2, Commentary, Application Note 8 counsels that: "If the court finds that a sentence imposed outside this time period is evidence of similar, or serious dissimilar, criminal conduct, the court may consider this information in determining whether an upward departure is warranted under § 4A1.3 (Adequacy of Criminal History Category)." In this case, I find that Pratt's prior convictions for criminal threatening and

9

assault constitute serious similar criminal conduct, and that his prior convictions for criminal liability for the conduct of another and DWI constitute evidence of serious dissimilar criminal conduct (I would also note the fact that the liability for the conduct of another offense obviously involved at least the danger of violence, a noticeable theme in defendant's criminal history). The remaining convictions are comparatively minor, but provide a backdrop of Pratt's history of antisocial behavior. I conclude that Pratt's history is serious and reveals a propensity to commit crimes, to employ violence, and to refuse to recognize or comply with the requirements of law. He is a recidivist whose future behavior is likely to be consistent with his past and more recent violent behavior, and the level of violence employed by him will likely escalate, as evidenced by the tenor of his most recent offense of conviction. And, finally, having observed defendant's attitude, demeanor, and manner while testifying, and having observed the reactions of those witnesses who knew him, and having heard and seen all of the evidence, this judge is well satisfied that the criminal threat involved in this case was hardly a prank or an idle gesture of contempt for authority by an otherwise harmless crank. Defendant's conduct amounted to nothing less than a calculated

10

threat of violence that had its intended effect.  In no event should his conduct be minimized or treated as anything but the serious crime it was and, importantly, as yet another consistent event in a developing pattern in defendant's serious criminal history.

Against that backdrop, it would, in my judgment, be unreasonable to say that this defendant is most like most people in CHC II.  Even generously discounting for the age of his multiple prior convictions, and considering seriously only those serious similar and serious dissimilar offenses mentioned above, defendant's history paints an unmistakable portrait of a person who is decidedly more dangerous and more likely to continue to engage in antisocial, criminal, and violent behavior in spite of punishment than most defendants in CHC II.

The next available category for consideration is CHC III.  That category seems appropriate in that it is one level above CHC II and otherwise adequately reflects defendant's actual criminal history.  Defendant's criminal history is most like most defendants in CHC III because most defendants in CHC III have between 4 and 6 countable prior convictions (or have found themselves in that category due to departures upward or downward because they are "most like most defendants" in CHC III).  While

defendant does not have between 4 and 6 countable convictions, as discussed above, his prior convictions for criminal threatening, criminal liability for the conduct of another (theft by unauthorized taking), assault, and driving while under the influence, coupled with his countable 1987 conviction for assault, reveal a consistent theme of assaultive and violent behavior over many years. It is clear that he has not gotten the message, no doubt in part due to past lenient sentencing treatment by the courts. His most recent conviction also attests to the fact that neither his attitude nor his behavior has changed much since his prior criminal acts in the years between 1975 and 1980. This defendant is at least most like most defendants in CHC III in terms of seriousness of prior offenses, number of prior offenses, likelihood of recidivism, likelihood of committing future violent offenses, and unlikelihood of successful rehabilitation. Therefore, evaluating his uncounted prior convictions in light of the factors discussed, and taking into account the age of those prior convictions, I still conclude that his actual criminal history is most like most defendants in CHC III.

**C.   Incremental Enhancement of Punishment.**

The incremental punishment imposed as a result of the two category departure to CHC III involved seven months of additional confinement if measured from CHC I, and four months if measured from CHC II. Four months would be the correct measure, since a departure is unquestionably warranted and the minimum departure would be one category upward. Thus, the choice in this case was between CHC II and CHC III. Whether counted as a four month or a seven month departure, however, the additional time based on criminal history is hardly extreme given the defendant's history, past lenient treatment, and the similarity between his latest offense of conviction and his past serious similar conduct. See Black, 78 F.3d at 9; United States v. Emery, 991 F.2d 907, 914 (1st Cir. 1993); United States v. Brown, 899 F.2d 94, 96 (1st Cir. 1990); United States v. Diaz-Villafane, 874 F.2d 43, 51-52 (1st Cir.), cert. denied, 493 U.S. 862 (1989). A two category departure is consistent with the presentence investigation report, the United States Attorney's recommendation, and this court's evaluation of defendant's history. It is also consistent with the notion that the grounds for departure in this case and defendant's past lenient treatment "called for more than a slap on the wrist." Black, 78 F.3d at 10. I am satisfied that the degree of departure is reasonable as a matter of fact, well

13

within my sentencing discretion under the Guidelines, and reasonable as a matter of law.

Unless required to do so as a matter of law, I would not, based on the record before me, reduce the sentence originally imposed on this defendant by reducing the degree of upward departure. Of course, if required to depart no more than one criminal history category, I would sentence this defendant to the maximum time allowed by CHC II.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

April 29, 1996

cc:  United States Attorney
     United States Probation
     United States Marshal
     M. Kristin Spath, Esq.

14