# United States Court of Appeals
## For the First Circuit

No. 12-2200

UNITED STATES OF AMERICA,

Appellee,

v.

RAYMAR LUCENA-RIVERA,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. José Antonio Fusté,  U.S. District Judge]

Before

Howard, Selya, and Lipez,
Circuit Judges.

Martin G. Weinberg, with whom Kimberly Homan was on brief, for appellant.
Juan Carlos Reyes-Ramos, Assistant United States Attorney, with whom Rosa Emilia Rodríguez-Vélez, United States Attorney, and Nelson Pérez-Sosa, Assistant United States Attorney, were on brief, for appellee.

April 24, 2014

**LIPEZ, Circuit Judge**. Appellant Raymar Lucena-Rivera is currently serving a term of imprisonment of 220 months after pleading guilty to one count of conspiring to commit money laundering as set forth in a multi-count indictment that also included drug-trafficking charges. In this sentencing appeal, Lucena-Rivera argues that the district court erred in (1) calculating the amount of laundered funds relevant to his base offense level, (2) applying an enhancement for having a leadership role, (3) applying an enhancement for being "in the business of laundering funds," and (4) failing to adequately consider the factors set forth in 18 U.S.C. § 3553(a). Essentially, Lucena-Rivera contends that the district court unduly relied on evidence concerning the underlying drug crimes rather than the money-laundering itself when determining his sentence.

Although we disagree with that assessment, we nonetheless conclude that more specific factual findings are necessary to allow us to adequately review the application of the enhancement for being "in the business of laundering funds." We find Lucena-Rivera's other claims of error meritless. Hence, we will remand the matter to the district court with directions to revisit only the application of the enhancement for being "in the business of laundering funds" while upholding the district court's other sentencing determinations.

Because there was no trial, the underlying facts of the case are taken from the plea agreement and pre-sentence investigation report ("PSI").[1]

Lucena-Rivera had been engaged in money-laundering and drug-trafficking activities for two years before the money-laundering activities at issue in this case began in 2010. On multiple occasions prior to 2010, he moved between 1,000 and 1,500 kilograms of cocaine into Puerto Rico, keeping some 200 to 300 kilograms for himself.

The transactions and activities relevant to Lucena-Rivera's money-laundering conviction included the following interactions with a DEA confidential source, who contacted Lucena-Rivera in 2010 and introduced himself as someone in the drug-trafficking business:

(1) $1,375,039 in cash delivered in plastic containers to the confidential source on May 28, 2010, to be divided between a check for $125,000 made out to Lucmar Solutions Corp., $1,088,000 in cash delivered to Colombia as payment for drugs, and the source's commission;

---

[1] Lucena-Rivera objected to only three paragraphs of the PSI (¶¶ 29, 34, and 86), thereby accepting the factual findings in the remainder of the report.

(2) a September 2010 meeting in Panama between Lucena-Rivera, Edgardo Torres-Vázquez,[2] two of Lucena-Rivera's associates, and the confidential source wherein the details of a money-laundering transaction -- including the denominations of the bills, the fee, and the timing -- were discussed;

(3) $2,390,960 in cash delivered to the confidential source on September 29, 2010, in exchange for various checks for real estate expenditures, including one made out to Joyuda Beach Resort for $1,175,000;

(4) $465,200 in cash delivered to the confidential source on September 30, 2010;

(5) $827,526 in cash delivered by the confidential source to Lucena-Rivera's associates in Panama;

(6) $896,304 delivered to the confidential source on November 23, 2010, $800,000 of which was to be delivered in cash to Panama as payment for drugs;

---

[2] Torres-Vázquez also pleaded guilty to money-laundering. He appealed his conviction on grounds of factual insufficiency and sentencing error. We affirmed his conviction on the basis of factual findings not relevant to Lucena-Rivera's appeal. See United States v. Torres-Vázquez, 731 F.3d 41 (1st Cir. 2013).

-4-

(7)     $1,655,000 to be delivered by Edgardo Torres-Vázquez to the confidential source in March 2011; and

(8)     $592,956 left for the confidential source to pick up and transport to New York as payment for drugs in August 2011.

The total of the above-described transactions was over $7 million. Lucena-Rivera argued that $1,816,000 of the total amount laundered, used to purchase properties, was not tied to drug trafficking; therefore, it was not relevant to the charge of promotional money laundering. Though expressing doubt as to the factual and legal merit of this objection, the district court nonetheless excluded that amount from its calculation. Accordingly, the district court determined that the total amount laundered for sentencing purposes was between $2.5 million and $7 million, triggering an eighteen-level increase to the base offense under U.S.S.G. § 2S1.1(a)(2).

The government also pressed for three sentencing enhancements -- a six-level enhancement for knowledge that any of the laundered money was proceeds of, or intended to promote the distribution of, a controlled substance; a four-level enhancement for being "in the business of laundering funds"; and a four-level enhancement for having a leadership role in the offense. Lucena-Rivera did not object to the six-level enhancement based on his

knowledge that the funds were involved in drug-trafficking, but did object to the other two.

The district court rejected appellant's objections to the two four-level enhancements. It found that the operation involved more than five participants and was under the leadership of Lucena-Rivera, thus warranting the application of a four-level enhancement under § 3B1.1(a). The court also found that the four-level enhancement under § 2S1.1(b)(2)(C) for being "in the business of laundering funds" applied to Lucena-Rivera because of the intertwined nature of his money laundering and drug trafficking activities. These enhancements produced a total offense level of 37, which yielded a guideline range of 210-240 months (with the upper limit being the statutory maximum).

The district court explained the sentence of 220 months as follows:

> [W]hat I will do is I will sentence him to 220 months, not to reach the statutory maximum. It means nothing. But that's what it is. It's like some sort of courtesy adjustment, if you will. . . .
>
> Don't doubt for a minute that I do think this is -- this was a very closely intertwined drug business and money laundering case. Extremely closely intertwined. Very difficult. Very difficult. Principles of relevant conduct, when you look at the whole thing, justify easily the level 18 on the amount. Easily.

The court provided no further explanation of the sentence imposed, nor did Lucena-Rivera request any.

On appeal, Lucena-Rivera challenges the total offense level calculation and the proffered reasons for the sentence. Specifically, he contests the calculation of the quantity of laundered funds; the applicability of the four-level enhancement for having a leadership role; and the applicability of the four-level enhancement for being "in the business of laundering funds."  As to the basis for the sentence, Lucena-Rivera further argues that the district court did not adequately address the factors under § 3553(a) and did not adequately explain the reasons for the sentence imposed.

His appeal blends legal and factual arguments.  To the extent that his challenge is based on questions of law, we review de novo.  See United States v. Walker, 665 F.3d 212, 232 (1st Cir. 2011).  To the extent that his challenge to an enhancement is based on the factual findings of the district court, we review only to determine whether those findings were "clearly erroneous."  Id.

**II.**

**A.  Amount of Laundered Funds**

Lucena-Rivera first argues that the district court erred in lumping together all of the cash amounts involved in the transactions with the confidential source.  Specifically, he asserts that (1) concealment money laundering and promotional money laundering are two distinct offenses and therefore any funds laundered for concealing, rather than promoting, unlawful activity

should not have been included in the quantity calculation for the purposes of sentencing; and (2) the government had the burden of proving that each money-laundering transaction involved funds that were "proceeds of" completed drug transactions and failed to meet that burden.

### 1.   Promotional and Concealment Money Laundering

The money-laundering statute, 18 U.S.C. § 1956(a)(1)(A)(i),[3] applies when an individual knowingly uses the proceeds of an unlawful activity in a financial transaction "with the intent to promote the carrying on of specified unlawful activity." 18 U.S.C. § 1956(a)(1)(A)(i).  Another provision of § 1956(a)(1) applies when an individual knowingly uses the proceeds of an unlawful activity in a financial transaction "to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity." 18 U.S.C. § 1956(a)(1)(B)(i).

---

[3] The indictment included one count of conspiracy to launder monetary instruments.  That count cited overt acts that were also charged as separate counts of money laundering.  Each of those money-laundering counts charged Lucena-Rivera with a violation of 18 U.S.C. § 1956(a)(1)(A)(i) and alleged that he "did knowingly conduct and attempt to conduct a financial transaction affecting interstate and foreign commerce . . . that involved the proceeds of a specified unlawful activity, that is: [drug trafficking] . . . with the intent to promote the carrying on of specified unlawful activity" (emphasis added).  Lucena-Rivera's plea agreement required him to plead only to the overarching conspiracy charge rather than to each count of money laundering separately.

Lucena-Rivera contends that those two subparts of the money-laundering statute are separate crimes -- promotional money laundering and concealment money laundering, respectively. Following from that argument, he claims that, as a matter of law, the quantity of funds used to calculate his total offense level should have included only those funds that were laundered for promoting illegal activity, rather than for concealing the source of the funds. The government responds that there is only one crime -- money laundering -- and that, whatever the purposes of the laundering, all of the funds should be considered in sentencing determinations.

We have previously described promotional and concealment money laundering as two different "modalities" of the same offense. United States v. Cedeño-Pérez, 579 F.3d 54, 57 (1st Cir. 2009) (citing United States v. Iacaboni, 363 F.3d 1, 4 n.7 (1st Cir. 2004)); see also United States v. García-Torres, 341 F.3d 61, 65-66 (1st Cir. 2003). In Cedeño-Pérez there was only one count of conspiracy to commit money laundering, but the indictment charged the defendant with conspiring to commit both modalities. 579 F.3d at 57. That treatment of the offense as a single crime with different modalities comports with the government's position here, as well as with our sister circuits' views. See, e.g., United States v. Bolden, 325 F.3d 471, 487 n.19 (4th Cir. 2003); United States v. Booth, 309 F.3d 566, 571-72 (9th Cir. 2002); United

States v. Holmes, 44 F.3d 1150, 1155-56 (2d Cir. 1995); accord United States v. Meshack, 225 F.3d 556, 580 n.23 (5th Cir. 2000), amended by 244 F.3d 367 (5th Cir. 2001) (per curiam); United States v. Navarro, 145 F.3d 580, 592 (3d Cir. 1998).

Consistent with precedent, we reaffirm that promotional and concealment money laundering are not distinct crimes, but rather alternative means of committing the general offense of money laundering. Accordingly, in calculating the total amount of funds laundered for the purposes of sentencing, the district court did not have to distinguish between those funds that may have been laundered for concealment rather than for promotion.

## 2. Proof as to Source of Funds

Lucena-Rivera argues that the government bore the burden of proving by a preponderance of the evidence that the funds involved in each separate money-laundering transaction included in the total amount calculation were the "proceeds of" a specific type of unlawful act -- namely, drug-trafficking.[4] Lucena-Rivera acknowledges that the government need not point to the specific street-level drug deals that generated the ultimately laundered

---

[4] As discussed in Part I, supra, Lucena-Rivera conceded the applicability of the six-level enhancement pursuant to U.S.S.G. § 2S1.1(b)(1), which amounted to an admission that he "knew or believed that any of the laundered funds were the proceeds of, or were intended to promote" drug-trafficking. Id. (emphasis added). In contesting the total amount calculation on appeal, he argues that the government failed to show that all of the laundered funds involved in the transactions at issue were "proceeds of" drug-trafficking.

funds. He nonetheless argues that, for each money-laundering transaction, the general source of the funds must be identified and the funds must have already been exchanged for drugs in a completed transaction before they can be considered "proceeds of" unlawful activity.

Drawing on these indisputable propositions, Lucena-Rivera then emphasizes the distinction between collecting money as "proceeds" of prior drug deals and later using that money to "promote" unlawful activity by purchasing more drugs in the future. He claims that the government and the district court wrongly conflated the two activities in evaluating the evidence on whether the laundered funds were "proceeds" of prior drug deals.

Other circuits have specifically addressed the potential conflation of the "proceeds" and "promotion" elements. Courts have recognized that simply because money is used to promote future unlawful activity it does not necessarily follow that the money was earned through prior unlawful activity. In recognizing this distinction, the Fifth Circuit has indeed held that "funds do not become the proceeds of drug trafficking until a sale of drugs is completed," and found that the government failed to prove this element by simply showing that the money was eventually exchanged for drugs post-laundering. United States v. Gaytan, 74 F.3d 545, 555-556 (5th Cir. 1996) (citing United States v. Puig-Infante, 19 F.3d 929, 939 (5th Cir. 1994)); see also United States v. Harris,

666 F.3d 905, 910 (5th Cir. 2012) (reaffirming the rule that "[m]oney does not become proceeds of illegal activity until the unlawful activity is complete [and the principle that] [t]he crime of money laundering is targeted at the activities that generally follow the unlawful activity in time").

Although the district court unquestionably considered evidence that the laundered funds were involved in future drug deals, there is no indication that the district court unduly relied on such evidence in making its determination that those funds were "proceeds of" prior drug deals. In the context of a long-running criminal conspiracy, we think it appropriate to consider the use of laundered funds for the perpetuation of an unlawful activity as circumstantial, but not conclusive, evidence that those funds were derived from that same unlawful activity.

The record also included evidence that went beyond simply demonstrating that the funds were used to purchase drugs in the future. According to the PSI, Lucena-Rivera had been transporting drugs for a drug-trafficking organization for two years prior to 2010, moving between 1,000 and 1,500 kilograms of cocaine at a time into Puerto Rico. The PSI further set forth numerous conversations between Lucena-Rivera and the DEA's confidential source about drug-trafficking activities involving Lucena-Rivera and his associates.

Finally, the PSI also set forth Lucena-Rivera's reported income for the tax years 2005-2010. That income was insufficient to supply the quantity of funds involved in the transactions at issue as well as to support Lucena-Rivera's purchases of real estate, cars, and other assets. Under the circumstances, it was reasonable for the district court to conclude by a preponderance of the evidence that more than $2.5 million of the laundered funds were the proceeds of Lucena-Rivera's earlier drug-trafficking activities.

**B. Role-in-the-Offense Enhancement**

To impose the four-level leadership enhancement under U.S.S.G. § 3B1.1(a), the district court is required to make two findings: "(1) a 'status determination,' i.e., that 'the defendant acted as an organizer or leader of the criminal activity,' [and] (2) a 'scope determination,' i.e., 'that the criminal activity met either the numerosity or the extensiveness benchmarks established by the guideline.'" United States v. Carrero-Hernández, 643 F.3d 344, 350 (1st Cir. 2011) (quoting United States v. Tejada-Beltrán, 50 F.3d 105, 111 (1st Cir. 1995)). Lucena-Rivera contends that the government failed to prove either of these elements by a preponderance of the evidence, and, therefore, the district court erred in finding that the enhancement applied.

As to status, Lucena-Rivera is indeed correct that we draw an important distinction between "organizing criminal

-13-

activities and organizing criminal actors." Carrero-Hernández, 643 F.3d at 350 (emphasis omitted). To apply an enhancement under § 3B1.1(a), the district court must find that a defendant exercised control over criminal actors, rather than just planned criminal activity. Id. at 350-51 (quoting United States v. Jones, 523 F.3d 31, 43 (1st Cir. 2008) ("[I]t is not enough that the defendant merely controlled, organized, or managed criminal activities[; he] must instead control, organize, or manage criminal actors.")). This status determination is distinct from the numerosity determination and simply asks whether the defendant exercised control over any other criminal actors. Hence, to satisfy the status element, "[r]egardless of whether the criminal activity involved five or more participants or was otherwise extensive, . . . a defendant needs only to have led or organized one criminal participant, besides himself of course." United States v. Arbour, 559 F.3d 50, 56 (1st Cir. 2009).

The PSI summarizes Lucena-Rivera's own description of his operation to the DEA confidential source upon their first meeting, which included the assurance that he paid his employees well to prevent them from talking if arrested. The PSI also describes several money-laundering transactions that involved participants in addition to Lucena-Rivera who appeared to be under his direction. The most prominent example is the March 2011 transaction in which Torres-Vázquez delivered money from Lucena-Rivera to the DEA

confidential source.[5] Lastly, the PSI makes repeated references to Lucena-Rivera's "partners" and "employees." Accordingly, the district court's finding that Lucena-Rivera led or organized other participants was not clearly erroneous.

As to scope, Lucena-Rivera does not dispute that more than five individuals were involved in his drug-trafficking operation, but contends that there was no basis to conclude that those individuals were also involved in the money-laundering offense of conviction. The Introductory Commentary to Chapter 3, Part B provides that "[t]he determination of a defendant's role in the offense is to be made on the basis of all conduct within the scope of § 1B1.3 (Relevant Conduct) . . . and not solely on the basis of elements and acts cited in the count of conviction." U.S.S.G. ch.3, pt. B, introductory cmt. Section 1B1.3(a)(1)(A) includes in the definition of relevant conduct "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant . . . that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense" (emphasis added).

Here, the drug-trafficking activity was a necessary precursor to the money-laundering offense of conviction.

---

[5] Contrary to Lucena-Rivera's contention, the undisputed facts contained in the PSI support the conclusion that he organized or led Torres-Vázquez.

-15-

Accordingly, the court's conclusion that the criminal activity involved five or more participants was not clearly erroneous.[6]

**C. "In the Business of Laundering Funds"**

The money-laundering Guidelines set forth in U.S.S.G. § 2S1.1 begin by laying out two different methods for calculating the base offense level.[7] Under U.S.S.G. § 2S1.1(a)(1) the base offense

---

[6] Lucena-Rivera attempts to blunt the force of this conclusion by arguing that relevant conduct cannot be considered in these circumstances. He points to § 2S1.1, Application Note 2(C), which states that 'in cases in which subsection (a)(1) applies, application of any Chapter Three [role-in-the-offense] adjustment shall be determined based on the offense conduct covered by this guideline (i.e., the laundering of criminally derived funds) and not on the underlying offense from which the laundered funds were derived.' U.S.S.G. § 2S1.1, cmt. n.2(C). Lucena-Rivera acknowledges that by its own terms this Application Note applies only to cases in which subsection (a)(1) applies and that he was appropriately sentenced under subsection (a)(2). However, because the district court found that he was involved in the underlying drug trafficking conduct, and because subsection (a)(1) applies to defendants who committed or could be held accountable for the underlying offense, he urges us nonetheless to apply this provision.

This argument fails because Lucena-Rivera cannot have it both ways; his concession that the district court appropriately sentenced him under subsection (a)(2) is dispositive. Given this concession, there is simply no basis for using the Application Note relevant to subsection (a)(1).

[7] U.S.S.G. § 2S1.1 reads as follows:

(a) Base Offense Level:

    (1) The offense level for the underlying offense from which the laundered funds were derived, if (A) the defendant committed the underlying offense (or would be accountable for the underlying offense under subsection (a)(1)(A) of § 1B1.3 (Relevant Conduct)); and (B) the offense level for that offense can be determined; or

level for the money-laundering charge is the same as the base

offense level for the underlying offense from which the laundered

funds were derived if "(A) the defendant committed the underlying

offense (or would be accountable for the underlying offense under

[principles of relevant conduct]); and (B) the offense level for

that offense can be determined."  Under this method, a defendant

---

(2) 8 plus the number of offense levels from the table in § 2B1.1 (Theft, Property Destruction, and Fraud) corresponding to the value of the laundered funds, otherwise.

(b)  Specific Offense Characteristics

(1)  If (A) subsection (a)(2) applies; and (B) the defendant knew or believed that any of the laundered funds were the proceeds of, or were intended to promote (i) an offense involving the manufacture, importation, or distribution of a controlled substance or a listed chemical; (ii) a crime of violence; or (iii) an offense involving firearms, explosives, national security, or the sexual exploitation of a minor, increase by 6 levels.

(2)  (Apply the Greatest):
(A)  If the defendant was convicted under 18 U.S.C. § 1957, increase by 1 level.

(B)  If the defendant was convicted under 18 U.S.C. § 1956, increase by 2 levels.

(C)   If (i) subsection (a)(2) applies;  and (ii) the defendant was in the       b u s i n e s s   o f laundering funds, increase by 4 levels.

(3)  If (A) subsection (b)(2)(B) applies; and (B)  the  offense  involved  sophisticated laundering, increase by 2 levels.

who launders the proceeds of his crimes, and is only convicted of money laundering, is susceptible to punishment equivalent to the punishment applicable to the underlying criminal activity. See United States v. Descent, 292 F.3d 703, 708-09 (11th Cir. 2002) (per curiam) (explaining that the change in the Guidelines to make reference to the underlying offense was an effort to have the sentence better reflect the culpability of the defendant). However, if either of the elements of subsection (a)(1) is not satisfied, the base offense level for the money-laundering charge is calculated pursuant to U.S.S.G. § 2S1.1(a)(2), which incorporates the tables that provide base offense levels for other crimes involving illegally obtained funds. Here, both parties agreed that subsection (a)(2) applied. Hence, we focus on the district court's application of the enhancement for being "in the business of laundering funds" set forth in § 2S1.1(b)(2)(C).

That application requires the district court to examine the totality of the circumstances to decide whether a defendant was "in the business of laundering funds." See U.S.S.G. § 2S1.1 cmt. n.4. The Application Note to the Guideline directs the court to consider the following non-exhaustive list of factors:

> (i) The defendant regularly engaged in laundering funds.
> (ii) The defendant engaged in laundering funds during an extended period of time.
> (iii) The defendant engaged in laundering funds from multiple sources.

> (iv)  The defendant generated a substantial
> amount of revenue in return for laundering
> funds.
> (v)   At the time the defendant committed
> the instant offense, the defendant had one or
> more prior convictions [related to money
> laundering or international financial
> transactions] . . .
> (vi)  During the course of an undercover
> government investigation, the defendant made
> statements that the defendant engaged in any
> of the conduct described in subdivisions (i)
> through (iv).

Id.

Neither party suggests an alternative definition of what it means to be "in the business of laundering funds."  We have also declined to adopt a firm definition of the term, instead pointing the district courts to the Sentencing Commission's commentary to the 2003 revision to § 2S1.1.[8]  As to who is subject to the "business" enhancement, "'[t]he Commission determined that, similar to a professional "fence", see § 2B1.1(b)(4)(B), defendants who routinely engage in laundering funds on behalf of others, and who gain financially from engaging in such transactions, warrant substantial additional punishment because they encourage the commission of additional criminal conduct.'"  United States v.

_____

[8] Among other things, the 2003 revision consolidated the money laundering guidelines, previously §§ 2S1.1 (Laundering of Monetary Instruments) and 2S1.2 (Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity).  It reflected an attempt to make the penalty structure address more "adequately the culpability of the defendant or the seriousness of the money laundering conduct."  U.S.S.G. app. C, vol. II, at 227 (2003).

Aquasvivas-Castillo, 668 F.3d 7, 14 (1st Cir. 2012) (quoting U.S.S.G. app. C, vol. II, at 228-29 (2003)).

The district court specifically acknowledged the factors set forth in the Application Note but made no factual findings as to their existence.  Instead, the district court focused on the "intertwined" nature of the drug-trafficking and money-laundering businesses and little else. Though the underlying drug-trafficking activity may have constituted "relevant conduct" for the purpose of applying the other enhancements to the money-laundering conviction, it is not encompassed by the list of factors set forth in the Application Note for evaluating the "business" enhancement.

The lack of adequate findings on the factors set forth in the Application Note prevents us from reviewing appropriately the application of the enhancement.  Accordingly, we will follow the practice, reaffirmed in United States v. Quinones, 26 F.3d 213, 219-220 (1st Cir. 1994), of remanding the matter to the district court with directions to revisit, on the basis of the existing record, the application of the enhancement for being "in the business of laundering funds."  On remand the district court can elect to either (a) vacate the sentence and conduct a new sentencing hearing to resentence Lucena-Rivera without the application of the enhancement,[9] or (b) reaffirm the sentence

_____

[9] We emphasize that any new sentencing hearing would be limited to simply resentencing Lucena-Rivera on the basis of an offense level and guideline range calculation that did not include

-20-

previously imposed, filing with the clerk of the district court written findings, based upon the existing record and consistent with this opinion, as to the application of the enhancement. Before making its decision between these courses of action, the district court has discretion to hold a hearing and invite attorney argument on the question of whether the existing record would support the findings necessary to apply the enhancement. See id. at 220 n.9. As we noted in Quinones, this approach is appropriate when the basis in the sentencing record for the application of an enhancement requires clarification. See id. at 219 (citing United States v. Levy, 897 F.2d 596, 599 (1st Cir. 1990), and United States v. Parra-Ibanez, 951 F.2d 21, 22 (1st Cir. 1991)).

We therefore withhold judgment and remand the matter to the district court. The district court shall notify the clerk of this court as to which option it chooses within twenty days of the date of this order. Should the court elect to proffer written findings rather than resentence Lucena-Rivera, those findings must be filed with the clerk of the district court within sixty days of

---

the "business" enhancement. We note that Lucena-Rivera concedes that if the four-level "business" enhancement were not applied to him, the two-level enhancement for "convict[ion] under 18 U.S.C. § 1956," the statute of conviction here, would apply in the alternative. U.S.S.G. § 2S1.1(b)(2) (directing the court to apply the greatest of a menu of "Specific Offense Characteristics" enhancements). The resultant offense level would thus be 35 (as opposed to the 37 calculated with the "business" enhancement), and the new guideline range would be 168-210 months (as opposed to 210-240 months).

the court's notification, and thereafter promptly transmitted to the clerk of this court. We will retain appellate jurisdiction over the matter to assess the adequacy of those findings in due course. However, should the district court indicate that it elects to vacate Lucena-Rivera's sentence and resentence him without applying the "business" enhancement, this court will issue judgment remanding the case to the district court so that it can vacate the sentence and proceed to resentencing.

**D. Section 3553(a) Factors and the Explanation for the Sentence**

When, as here, a defendant does not raise an objection to the sentencing judge's explanation and alleged failure to address the § 3553(a) factors in the district court, we review a subsequent challenge to the adequacy of the sentencing analysis for plain error. See United States v. Murphy-Cordero, 715 F.3d 398, 401 (1st Cir. 2013).

**1. Section 3553(a) Factors**

In interpreting the procedural requirement to undertake a § 3553(a) analysis, we have held that a sentencing court is not obligated to conduct "'an express weighing of mitigating and aggravating factors'" or "'individually mention[]'" each § 3553(a)factor. Id. at 401 (quoting United States v. Lozada-Aponte, 689 F.3d 791, 793 (1st Cir. 2012)). The inquiry on appeal thus becomes whether "we are satisfied from the [district] court's limited explanation that it considered all of the applicable

-22-

factors and viewed the [sentence] as sufficient to account for the defendant's individual circumstances." United States v. Zapata, 589 F.3d 475, 487 (1st Cir. 2009).

Here, the district court offered only a cursory explanation for the sentence, saying that it reflected a "courtesy adjustment."[10] If that were the only explanation in the record, a remand might well be warranted for further consideration and explanation, even under the plain error standard. However, the district court made references during the course of the sentencing hearing indicating that other § 3553(a) factors were considered -- in particular the need for adequate deterrence under § 3553(a)(2)(B) and the seriousness of the offense under § 3553(a)(2)(A).

Specifically, in response to defense counsel's argument that Lucena-Rivera was simply an intermediary (the "money man" as he put it) and even a slight punishment for him would thus be

---

[10] Although we quoted it earlier, the text of the district court's explanation is reproduced here for convenience:

> [W]hat I will do is I will sentence him to 220 months, not to reach the statutory maximum. It means nothing. But that's what it is. It's like some sort of courtesy adjustment, if you will. . . .

> Don't doubt for a minute that I do think this is -- this was a very closely intertwined drug business and money laundering case. Extremely closely intertwined. Very difficult. Very difficult. Principles of relevant conduct, when you look at the whole thing, justify easily the level 18 on the amount. Easily.

sufficient to send a message to drug-traffickers about the culpability of everyone in their organization, the district court took the view that a Guideline sentence was warranted because money laundering is "an integral part of drug trafficking." The court also emphasized the seriousness of the offense, concluding the explanation for the sentence with the statement, "[p]rinciples of relevant conduct, when you look at the whole thing, justify easily the level 18 enhancement. Easily." As for Lucena-Rivera's principal argument for a below-Guideline sentence on the basis of his personal history and characteristics pursuant to § 3553(a)(1),[11] the court's reference to a "courtesy adjustment," though imprecisely worded, was apparently a reference to his stature in his family and the community.

Accordingly, the district court did not plainly err in its consideration of the § 3553(a) factors or its limited explanation thereof.

### 2. Sentencing Factor Manipulation

Lucena-Rivera contends that the district court did not adequately address or credit his allegations of sentencing factor

---

[11] Lucena-Rivera put forth substantial evidence as to his personal history and characteristics as a loving son, brother, husband, and father that may have warranted a downward departure from the Guideline range. See 18 U.S.C. § 3553(a)(1) (instructing that a sentence should reflect "the nature and circumstances of the offense and the history and characteristics of the defendant").

manipulation.[12]     Sentencing factor manipulation occurs "'where government agents have improperly enlarged the scope or scale of [a] crime.'" United States v. Fontes, 415 F.3d 174, 180 (1st Cir. 2005) (alteration in original) (quoting United States v. Montoya, 62 F.3d 1, 3 (1st Cir. 1995)).  We have recognized that because "'[b]y definition, there is an element of manipulation in any sting operation,' . . . relief for sentencing factor manipulation is reserved for only 'the extreme and unusual case.'"  Fontes, 415 F.3d at 180 (first alteration in original) (quoting United States v. Connell, 960 F.2d 191, 194 (1st Cir. 1992) and Montoya, 62 F.3d at 4).  The defendant bears the burden of establishing sentencing factor manipulation by a preponderance of the evidence, United States v. Gibbens, 25 F.3d 28, 31-32 (1st Cir. 1994), and a district judge's "determination as to whether improper manipulation exists is ordinarily a factbound determination subject to clear-error review."  Id. at 30.

Here, Lucena-Rivera argues that the government possessed enough information and evidence to prosecute him as of September 2, 2010, yet continued to launder money and import drugs with him until August 2011.  Lucena-Rivera maintains that the government's motivation for continuing this criminal activity was to inflate his

[12] The district court briefly remarked before imposing the sentence, "I don't find the evidence, I don't find anything in this record that allows me to conclude that there was manipulation in this case as described by the case law, First Circuit case law."

-25-

eventual sentence. See United States v. Egemonye, 62 F.3d 425, 428 (1st Cir. 1995) (noting that a government sting operation "could not be endlessly prolonged and enlarged," but finding no "'extraordinary misconduct'" there).

Although the investigation was prolonged beyond the initial money-laundering transaction, Lucena-Rivera has not sustained his burden of demonstrating an improper motive for this prolongation. On the contrary, the limited record on this issue suggests proper motives. As noted at the outset, one of Lucena-Rivera's associates (Torres-Vázquez) was indicted and convicted on the basis of, in part, information and evidence obtained during the later transactions between himself, Lucena-Rivera, and the confidential informant. See United States v. Torres-Vázquez, 731 F.3d 41, 45-46 (1st Cir. 2013); see also United States v. Barbour, 393 F.3d 82, 87 (1st Cir. 2004) (noting that a proper motive for prolonging an investigation would be "to identify more of the conspirators and gather evidence against them"). Furthermore, the government was investigating Lucena-Rivera for drug crimes at the time, not simply money-laundering, and law enforcement authorities may not have completed their investigation of those crimes.

Although more explanation from the district court would have aided our review, it invoked generally First Circuit case law in stating its conclusion that Lucena-Rivera failed to demonstrate that the government was motivated by an improper goal rather than

a legitimate one.  On this record, that determination was not clearly erroneous. <u>See</u> <u>Barbour</u>, 393 F.3d at 87 ("A district court's choice between two or more reasonable interpretations of the evidence cannot be called clearly erroneous.").

### III.

For the reasons set forth in Part II.C above, we <u>remand</u> the case to the district court for proceedings consistent with this opinion.  We retain jurisdiction for the time being pending the district court's election as to whether to file additional written findings as described in this opinion or, alternatively, to vacate the sentence.  <u>So ordered.</u>