**Not for Publication in West's Federal Reporter**

# United States Court of Appeals
## For the First Circuit

No. 14-1165

UNITED STATES,

Appellee,

v.

ADAM GOODWIN,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. George Z. Singal, U.S. District Judge]

Before

Howard, Chief Judge,
Torruella and Barron, Circuit Judges.

Edward S. MacColl and Thompson, Bull, Furey, Bass & MacColl, LLC, P.A., on brief for appellant.
Margaret D. McGaughey, Appellate Chief, and Thomas E. Delahanty II, United States Attorney, on brief for appellee.

July 21, 2015

**TORRUELLA**, **Circuit Judge**.  Defendant-Appellant Adam Goodwin pled guilty to conspiracy to possess with intent to distribute Oxycodone, and to aiding and abetting the commission of healthcare fraud.  He now challenges his 108-month prison sentence on the grounds that: (1) the four-level role enhancement was unsupported by the evidence before the district court; (2) his sentence is unreasonable because of the disparity with other co-defendants; and (3) he is entitled to a reduction from a post-sentencing retroactive change in the Sentencing Guidelines.  Finding no errors, we affirm.

## I.  Background

Because Goodwin's conviction is the result of a guilty plea, we glean the facts from the plea colloquy, the Presentence Investigation Report ("PSR"), and the transcripts of the presentence conference and sentencing hearing.  See United States v. Arbour, 559 F.3d 50, 51 (1st Cir. 2009) (citing United States v. Graciani, 61 F.3d 70, 72 (1st Cir. 1995).  Although Goodwin objected to several sections of the PSR -- to which reference is made in this opinion -- the facts relevant to our analysis are not in controversy.

Early in 2010, Goodwin became involved in a conspiracy to distribute prescription pain medication, including the controlled substance Oxycodone.  The conspiracy had been orchestrated for several years by Dr. John Perry, the owner of Atlantic Foot &

Ankle, a podiatry clinic in Portland, Maine. Dr. Perry devised a scheme by which he would issue hundreds of prescriptions for a variety of controlled substances to individuals who had no real medical need. In the process, Dr. Perry fabricated medical charts and patient files that contained false information in an effort to make it appear that those individuals were legitimate patients who required the medication. Goodwin referred to Dr. Perry at least some of these false patients. The prescriptions were then filled at pharmacies throughout southern Maine, and some were paid for through the Maine Care and Medicare health insurance programs. The pills were delivered to third parties who would sell them illegally, and the cash proceeds were in turn delivered to members of the conspiracy, including Goodwin. Goodwin kept part of the proceeds to finance a night club that he planned to open in Westbrook, Maine.

During Goodwin's participation in the conspiracy, between February and November 2010, Dr. Perry issued at least 150 prescriptions totaling over 10,000 pills to Goodwin, co-defendant Neil Laverriere, and a group of six other participants. On some occasions, it was Goodwin who was in charge of delivering cash -- usually $400.00 -- to Dr. Perry in compensation for the prescriptions.

On November 28, 2012, Goodwin was charged with conspiracy to possess with intent to distribute Oxycodone in violation of 21

U.S.C. §§ 841(a)(1) and 846 ("Count 1"), and healthcare fraud in violation of 18 U.S.C. § 1347 ("Count 2"). Goodwin pled guilty to both charges on July 29, 2013.

The PSR recommended a base offense level of thirty two for the drug conspiracy charge and a four-level enhancement for his aggravating role as an "organizer or leader of a criminal activity that involved five or more participants," pursuant to section 3B1.1(a) of the United States Sentencing Commission Guidelines Manual ("USSG"). Goodwin documented his objections to this recommendation, asserting that he should not receive a four-level enhancement because "he did not recruit some of the identified individuals; many of those individuals did not play an active role in carrying out the instant offense, and their roles were so modest that they were not charged with committing a crime. . . ."

At the presentence conference, the district judge asked about Goodwin's objections to the recommendations in the PSR. The defense counsel explained: "[w]e think that the enhancement is too high. We are not saying there shouldn't be an enhancement, but that enhancement is too high." The Government argued that it favored the four-level enhancement and the district court responded "It's your burden," signaling that the Government would have to prove Goodwin's status as an organizer or leader of the conspiracy.

During the sentencing hearing, however, when this issue arose, the Government presented no evidence of Goodwin's

-4-

participation as an organizer or leader. Yet, the district court still found that the four-level enhancement was justified. It calculated the base offense level for Count 1 at thirty two and added the four levels corresponding to the enhancement, for a total of thirty six. For Count 2, it found a base offense level of six and added the same four-level enhancement, for a total of ten. Because Goodwin accepted responsibility, the district court reduced the thirty six levels for Count 1, for a total offense level of thirty three. Given Goodwin's Criminal History Category of III, the calculation resulted in an advisory Guidelines range of 168 to 210 months. The district court granted the Government's request for a twenty-five percent downward departure and additionally issued a downward variance, and sentenced Goodwin to a below-the-range total term of 108-month imprisonment on each of the counts, to be served concurrently.

This appeal followed.

## II. Discussion

### A. The Four-Level Enhancement for Goodwin's Aggravating Role

The aggravating role enhancement of § 3B1.1(a) requires that the district court find that "the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." USSG § 3B1.1(a). That is, the district court must make two separate findings: (1) the scope of the criminal activity involved five or more participants

-5-

or was otherwise extensive; and (2) the status of the defendant was that of an organizer or a leader of the criminal activity. Arbour, 559 F.3d at 53 (citing United States v. Tejada-Beltrán, 50 F.3d 105, 111 (1st Cir. 1995)). These findings are subject to a preponderance of the evidence standard. Id. (citing United States v. Pierre, 484 F.3d 75, 89 (1st Cir. 2007)); see also United States v. Carrero-Hernández, 643 F.3d 344, 350-51 (1st Cir. 2011).

These scope-and-status determinations supporting the role enhancement are reviewed for clear error. United States v. Martínez-Medina, 279 F.3d 105, 123 (1st Cir. 2012) ("We review role-in-the-offense [enhancements] . . . for clear error."); Arbour, 559 F.3d at 53; United States v. Colón-Muñoz, 318 F.3d 348, 364 (1st Cir. 2003); see also Tejada-Beltrán, 50 F.3d at 110 ("Assessing a defendant's role in the offense is a fact-specific task, suggesting by its very nature 'that considerable respect be paid to the views of the nisi prius court.'" (quoting United States v. McDowell, 918 F.2d 1004, 1011 (1st Cir. 1990))). Such a conclusion will not be set aside unless we are "left with the definite and firm conviction that a mistake has been committed" by the district court. United States v. González-Meléndez, 594 F.3d 28, 35 (1st Cir. 2010) (quoting Arbour, 559 F.3d at 53); see also United States v. Wright, 873 F.2d 437, 443-44 (1st Cir. 1989) (explaining the rationale for applying clear error review).

As to the district court's scope determination, Goodwin argues on appeal that while he conceded at the sentencing hearing that the conspiracy included more than five participants, this does not mean that he recruited as many as five participants.  In order to meet the scope requirement to support a role enhancement the district court only needs to find that the criminal enterprise is extensive or that it included more than five participants.  See United States v. Lucena-Rivera, 750 F.3d 43, 50 (1st Cir. 2014) (holding that a scope determination only requires finding "'that the criminal activity met either the numerosity or the extensiveness benchmarks established by the guideline'" (quoting Carrero-Hernández, 643 F.3d at 350)); Arbour, 559 F.3d at 53 ("The disjunctive language of § 3B1.1(a) is important -- a criminal activity may be extensive even if [it] does not involve five or more participants.").

Who is considered a member of the conspiracy for purposes of the numerosity criterion is to be broadly construed, and all persons involved in the conspiracy -- including outsiders -- can be counted towards considering the conspiracy "extensive."  See id. (quoting USSG § 3B1.1 cmt. 3).  Courts may look beyond the number of participants to evaluate whether a conspiracy was "extensive" by considering "the totality of the circumstances, including . . . the width, breadth, scope, complexity, and duration of the scheme."

<u>Pierre</u>, 484 F.3d at 89 (quoting <u>United States</u> v. <u>Dietz</u>, 950 F.2d 50, 53 (1st Cir. 1991)).

Based on the broad factors for considering a conspiracy extensive, the district court did not clearly err in determining that this conspiracy met the scope requirement under § 3B1.1(a). According to Goodwin's own counsel's statements at the sentencing hearing, "the four-point enhancement is a mistake not supported by the evidence. . . . A two-or three-point enhancement would be appropriate." He also stated that "[t]his was an ongoing scheme that involved others over an extended period of time with which Mr. Goodwin had no involvement." Then, he went on to acknowledge that "we don't dispute that there were five people involved in this but that Mr. Goodwin recruited or solicited the participation of five folks, that is disputed." Based on this and the amended PSR, the district court found that it was an extensive conspiracy, "involving . . . more than a hundred prescriptions that were filled in various pharmacies." Further, the district court expressly concluded that "this criminal conspiracy . . . involved five or more individuals and was extensive."

Goodwin claims that the Government's reliance on facts contained in the PSR, which he timely objected to, is unavailing because the government did not present additional corroborating evidence. We note, however, that Goodwin's statements alone clearly support a finding that this conspiracy either involved five

or more people, or was extensive. Furthermore, even when a defendant objects to facts in a PSR, the district court is entitled to rely on the objected-to facts if the defendant's objections "are merely rhetorical and unsupported by countervailing proof." United States v. Prochner, 417 F.3d 54, 66 (1st Cir. 2005) (quoting United States v. Cyr, 337 F.3d 96, 100 (1st Cir. 2003) (internal quotation marks omitted). Goodwin admitted to the size of the conspiracy in his objections to the PSR. His objections can be reduced to the fact that he did not bring *all* of the people mentioned in the PSR into the conspiracy. That is, he admits to recruiting some but not all five co-conspirators. But, that is irrelevant to this role enhancement. What matters is that the conspiracy was extensive or included five or more participants. Goodwin does not really object to the facts contained in the PSR; in essence, his argument is that those facts do not trigger the role-enhancement. Because the test for the scope of the conspiracy was met, we conclude that the district court did not err. We now examine Goodwin's claims regarding his status an organizer or leader.

As to the status determination, Goodwin argues that he did not design or engineer the illegal scheme, which was simply presented to him, and that he did not coerce others into joining the conspiracy. Admitting that he did invite others to join the conspiracy and gave their names to Dr. Perry to issue prescriptions

or create false records, he concedes that he "did ask some others to lend their names and play a role."  But, since imposing the aggravating role enhancement requires a factual record, and the Government failed to provide any evidence during the sentencing hearing, Goodwin claims that there exists no evidence to support the conclusion that he was an organizer or leader.  As we explain below, Goodwin's own admissions provided sufficient evidence on which the district court could base its determination.

Goodwin argues that the district court did not make adequate findings concerning his control over the conspiracy so as to allow appellate review; and his "role" -- as reflected by the record and even as described by the Government -- simply did not involve the required degree of control.[1]  However, the inquiry over a defendant's role in the conspiracy as an organizer or leader requires an analysis of many factors, including:

> the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the

---

[1]    In his Reply Brief, Goodwin stresses that Lucena-Rivera established a requirement for an "element of control" over other members of the conspiracy that he never had.  Lucena-Rivera, 750 F.3d at 50.  However, whether there was an "element of control" over other co-conspirators is met as further explained therein. Id. ("[I]t is not enough that the defendant merely controlled, organized, or managed criminal activities[; he] must instead control, organize, or manage criminal actors." (alteration in original) (emphases added) (quoting United States v. Jones, 523 F.3d 31, 43 (1st Cir. 2008))).

nature and scope of the illegal activity, and the degree of control and authority exercised over others.

USSG § 3B1.1(a) cmt. n.4. And, when evaluating these, "there need not be proof of each and every factor before a defendant can be termed an organizer or leader." United States v. Rivera Calderón, 578 F.3d 78, 103 (1st Cir. 2009) (quoting Tejada-Beltrán, 50 F.3d at 111); Tejada-Beltrán, 50 F.3d at 111 ("This list is intended to be representative rather than exhaustive." (citing United States v. Talladino, 38 F.3d 1255, 1260 (1st Cir. 1994)). Indeed, "the guideline commentary makes plain that a defendant needs only to have led or organized one criminal participant, besides himself of course, to qualify as a leader or organizer under § 3B1.1(a)." Arbour, 559 F.3d at 56 (emphasis in original). But there is no need for a leadership role in the sense of having "some degree of dominance or power in a hierarchy . . . . One may be classified as an organizer, though perhaps not as a leader, if he coordinates others so as to facilitate the commission of criminal activity." Tejada-Beltrán, 50 F.3d at 112 (citing United States v. Rodríquez Alvarado, 985 F.2d 15, 20 (1st Cir. 1993)). Thus, a defendant who brings others into the criminal organization can be "the very prototype of an organizer, serving as a magnet to bring others together and thereby lend feasibility to the commission of the crime." Id. at 113.

There can also be more than one member of a conspiracy who qualifies as a leader or organizer, and "the mere fact that

-11-

someone was [subordinate] to a conspirator does not establish, without more, that the defendant was not an organizer or leader." United States v. Appolon, 695 F.3d 44, at 71 (1st Cir. 2012) (alterations omitted) (internal quotation marks omitted) (quoting United States v. Casas, 356 F.3d 104, 109 (1st Cir. 2004)).

Here, Goodwin argues that the only claim made by the Government related to his control over other participants was that he provided names to Dr. Perry and that he asked those persons to visit Dr. Perry for him to generate fake medical charts in their names. He further asserts that to ask someone to "take a step" is not the same as having "control" over that person. Again, Goodwin's arguments on appeal are wrong in light of his admissions before the district court. At the sentencing hearing, Goodwin conceded that "he did ask some others to lend their names and play a role." His argument at that hearing was that, in terms of the hierarchy of the conspiracy, there were others with more involvement and control. His attorney also explained that Dr. Perry approached someone known to Goodwin and Goodwin got involved when he saw this as an easy financial opportunity, but Goodwin was not the leader. As to Goodwin's involvement in bringing people into the conspiracy he added that "[m]any participants who Mr. Goodwin did ask to be involved weren't prosecuted at all." Finally, when Goodwin spoke at the sentencing

-12-

hearing he added that he "did ask others to be involved and I regret that."

According to the amended PSR, there were at least eight other individuals on whose names Dr. Perry issued prescriptions during the conspiracy and it was Goodwin who "recruited most of these individuals."  His specific objection to that language -- included in the PSR -- reads "[Goodwin] did not recruit some of the identified individuals; many of those individuals did not play an active role in carrying out the instant offense, and their roles were so modest that they were not charged with committing a crime."

Because the status determination only requires that the defendant served as an organizer of only one other participant, which in turn includes bringing people into the conspiracy, the fact that other participants had a higher degree of control over the criminal enterprise does not help Goodwin.  Thus, we do not find clear error in the district court's determination that Goodwin was an organizer of this conspiracy.  See United States v. Díaz-Díaz, 433 F.3d 128, 138-39 (1st Cir. 2005) (finding organizer enhancement under § 3B1.1(a) for a defendant that recruited two people into the conspiracy); see also United States v. Olivier-Díaz, 13 F.3d 1, 5 (1st Cir. 1993).

## B.  The Sentence is Reasonable Despite Disparities

As a second issue on appeal, Goodwin argues perfunctorily that he is entitled to resentencing because his co-conspirators

received shorter sentences. Goodwin claims that 18 U.S.C. § 3553(a)(6) requires the court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct . . . ." He asks for an even wider downward variance from his below-Guidelines sentence (which the district court already both departed and varied downward for a total reduction of sixty months from his corresponding range) because the district court imposed upon him a higher sentence compared to other allegedly more culpable defendants, including Dr. Perry. Furthermore, Goodwin's sentence, he adds, is unreasonable because it is three-times higher than co-defendant Mr. Laverriere's -- who actually filled the illegal prescriptions, sold the drugs to a third party who then sold them on the street, and collected the cash.

We review the substantive reasonableness of a criminal sentence for abuse of discretion. United States v. Trinidad-Acosta, 773 F.3d 298, 308-09 (1st Cir. 2014). In doing so, we first ask whether there were any procedural flaws in the sentencing, and then determine whether there are any substantive concerns.[2] United States v. Vega-Salgado, 769 F.3d 100, 103 (1st

---

[2] Goodwin's arguments seem only intended to be a substantive challenge predicated on the disparity with his co-conspirators. In any event, the district court did not commit any procedural errors, such as "failing to calculate [] the Guidelines range, treating the Guidelines as mandatory, failing to consider the section 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence -- including an

-14-

Cir. 2014). Avoiding disparities between co-defendants may be considered in analyzing the reasonableness of a sentence, but "a party is not entitled to a lighter sentence merely because his co-defendants received lighter sentences". United States v. Dávila-González, 595 F.3d 42, 50 (1st Cir. 2010) (quoting United States v. Wallace, 573 F.3d 82, 97 (1st Cir. 2009) (internal quotation marks omitted)). Instead, "[w]e afford the district court 'wide discretion' in sentencing decisions." Wallace, 573 F.3d at 97 (quoting United States v. Marceau, 554 F.3d 24, 33 (1st Cir. 2009).

The district judge detailed his grounds for the sentencing determinations. He explained that he took "into account the written presentence investigation report, everything I've heard from counsel today, the evidence presented at this hearing, all of the written submissions made by the defendant, the Government's motion for a [§ 5K.1] with supporting information, and obviously the allocution of this defendant." Then, he explained the Guidelines range calculation, to which the defense assented. Notably, the district court also stated that it considered all the factors from § 3553(a), "most important in this case the nature and circumstances of the offense, the history of the defendant, the seriousness of this offense, the need for just punishment and the need for deterrence." Additionally, the district court considered

explanation for any deviation from the Guidelines range." Trinidad-Acosta, 773 F.3d at 309 (quoting United States v. Rivera-Moreno, 613 F.3d 1, 8 (1st Cir. 2010).

the "scourge of Oxycontin addiction in the state of Maine," the "motivation of the defendant," and Goodwin's considerable criminal record "involving some issues of violence and [Goodwin's] noncriminal arrests, many of them involving assaults, [which resulted in] accusations but not convictions . . . but [are nonetheless] troubling." After considering those factors, the district court still granted the Government's request for a twenty five percent downward departure, and the court further varied downwards from the Guidelines range and reached the 108-month prison sentence it imposed.

A sentence is found to be substantively reasonable if it is based on a "plausible sentencing rationale and [is] a defensible result." United States v. Pol-Flores, 644 F.3d 1, 4-5 (1st Cir. 2011) (quoting United States v. Martin, 520 F.3d 87, 96 (1st Cir. 2008)). When a sentence falls within the Guidelines, a defendant challenging it must "carry a heavy burden." United States v. Maisonet-González, 785 F.3d 757, 762 (1st Cir. 2015) (quoting United States v. Battle, 637 F.3d 44, 51 (1st Cir. 2011)). But, for a sentence that is below-the-range to be found unreasonable is even rarer. See United States v. Merritt, 755 F.3d 6, 12 (1st Cir. 2014); United States v. Madera-Ortiz, 637 F.3d 26, 30 (1st Cir. 2011) (holding that an appellant's argument must "adduce fairly powerful mitigating reasons" to persuade the court of appeals that the discretion afforded to the district court was abused) (quoting

United States v. Navedo-Concepción, 450 F.3d 54, 59 (1st Cir. 2006))). This burden is to be analyzed based on the totality of the circumstances. Rivera-Moreno, 613 F.3d at 8 (citing Gall v. United States, 552 U.S. 38, 51 (2007)).

Looking at the totality of the circumstances, the district court did not abuse its discretion in this analysis. Goodwin's below-the-range sentence is substantively reasonable. He challenges his sentence because of the disparity against his co-conspirators, but the district court compared his personal factors, including his extensive criminal record -- which the court expressly recognized contained non-charged offenses -- as well as the rest of the § 3553(a) factors. In so doing, the court issued a sentence that is both plausible and defensible. Furthermore, Goodwin does not show why his co-defendants were "identically situated" to him. See Wallace, 573 F.3d at 97. The principle behind avoiding disparities is to minimize disparities among defendants nationally, not among co-defendants. United States v. Torres-Landrúa, 783 F.3d 58, 69 (1st Cir. 2015) (quoting Dávila-González, 595 F.3d at 49.

## C. The Post-Sentencing Retroactive Amendment to the Sentencing Guidelines

Goodwin's third and final argument is that we should remand this case so that his sentence can take into account Amendment 782 to the Sentencing Guidelines, which became effective on November 1, 2014, and retroactively reduced most drug quantity

base offense levels by two levels.  See USSG App. C Supp., Amendment 782 (Nov. 1, 2014).  According to 18 U.S.C. § 3582(c)(2) "[d]istrict courts 'may' reduce prison terms if the defendant's sentence was 'based on a sentencing range that has subsequently been lowered by the Sentencing Commission . . . if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.'" United States v. Alejandro-Montañez, 778 F.3d 352, 362 (1st Cir. 2015) (quoting 18 U.S.C. § 3582(c)(2)). The Sentencing Commission made this amendment retroactive, provided that no potential sentencing reduction takes effect before November 1, 2015.  See id. (citing USSG § 1B1.10(a)(1)).  The Government responds that we need not grant this request since Goodwin can file a motion seeking that relief from the district court directly.  It adds that there is no need for an immediate ruling on this issue because any relief granted by the district court will not be effective until November 1, 2015.

We note that the district court attempted to initiate -- on its own motion -- the sentence modification proceedings allowed under 18 U.S.C. § 3582(c)(2), but opted against continuing when Goodwin filed a motion stating that it should wait until this appeal was resolved.  While the district court lacks the authority to act on a § 3582(c)(2) motion during the pendency of an appeal, once a mandate issues that bar is removed.  See United States v. Maldonado-Ríos, --- F.3d ---, 2015 WL 3652600 at *2 (1st Cir. June

-18-

15, 2015). Accordingly, remand is not required. Upon issuance of the mandate, the district court will be free to determine what, if any, modification to Goodwin's sentence may be appropriate in light of Amendment 782.

## III. <u>Conclusion</u>

For the foregoing reasons, the judgment of the district court is affirmed.

**<u>AFFIRMED</u>**.